Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Ann T. Wick
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SEAN RICE,<br><br>Defendant. | Case No.: 22-CR-101-SAB<br><br>**UNITED STATES'<br>SENTENCING MEMORANDUM** |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Ann T. Wick, Assistant United States Attorney for the Eastern District of Washington, submits the following memorandum setting forth the United States' position at sentencing. The United States recommends that the Court sentence Defendant to a term of imprisonment of 120 months, followed by a 10-year term of supervised release. The United States also requests an order of restitution in the amount of not less than $3,000 per victim.

## INTRODUCTION

Defendant is within the 55% of child pornography offenders who have also engaged in direct sexual conduct with a minor. He received child pornography via direct messaging applications, saved child pornography to his phone, and distributed child pornography to another user of the app. While transmitting child pornography

**UNITED STATES' SENTENCING MEMORANDUM - 1**

with someone he believed to share a sexual interest in minors, Defendant bragged of his unfettered access to and sexual contact with a 13-year old relative. Although Defendant initially told investigators he was joking, he later admitted to the sexual acts after he was confronted with the minor victim's written account of events.

The United States agrees with the procedural history detailed in paragraphs one through six of the initial Presentence Investigation Report (hereinafter "PSR"). ECF No. 69. The United States recently learned of a violation of pretrial release, in the form of a new law violation, which information has been passed on to United States Probation and Defendant's attorney, Ms. Youngcourt. Lastly, the United States agrees with the offense conduct summarized in paragraphs 11 through 13 and 36 through 38 of the PSR. Neither party filed objections to the PSR.

## LEGAL ANALYSIS

The Ninth Circuit has set forth a basic framework which the district courts should follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts are to begin all sentencing proceedings by correctly determining the applicable sentencing guidelines range, precisely as they would have before *Booker*.

(2) Courts should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties. Courts may not presume that the guidelines range is reasonable. Nor should the guidelines factors be given more or less weight than any other. They are simply to be treated as one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

(3) If a court decides that a sentence outside the guidelines is warranted, then it must consider the extent of the deviation and ensure that the

UNITED STATES' SENTENCING MEMORANDUM - 2

justification is sufficiently compelling to support the degree of the variance.

(4) Courts must explain the selected sentence sufficiently to permit meaningful appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

## SENTENCING CALCULATION

### I. Statutory Maximum and Minimum Sentence

For Defendant's convictions for receipt of child pornography, the Court must impose a minimum term of imprisonment of five years and a minimum term of supervised release of five years. The Court may impose a maximum term of imprisonment of twenty years, a fine of up to $250,000, and up to a life term of supervised release.

### II. United States Sentencing Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

#### A. Offense Level Calculation

The PSR correctly calculated Defendant's total offense level as 34. PSR ¶ 35.

#### B. Criminal History Calculation

The PSR correctly calculated Defendant's criminal history category as category I. PSR ¶ 43.

#### C. Advisory Guideline Range

Based upon a total offense level of 34 and a criminal history category of I, the advisory guideline imprisonment range is 151 to 188 months. PSR ¶ 80.

**UNITED STATES' SENTENCING MEMORANDUM - 3**

# IMPOSITION OF SENTENCE

## I. Imposition of a Sentence under 18 U.S.C. § 3553

### A. 18 U.S.C. § 3553(a) factors

#### 1. The nature and circumstances of the offense

The nature and circumstances of Defendant's offense support a 120-month sentence. Using various chat applications and the alias "Rengokuhashira," Defendant engaged in the online sending and receiving of child pornography for several months before his activity was noticed by an undercover law enforcement agent (UC). Defendant privately chatted with the UC and sent the UC several child pornography files. The UC captured one video and five images of the distributed child pornography, the content of which included prepubescent minors, a dog licking the genitals of a bound and blindfolded minor being orally raped by an adult male, and a toddler being either vaginally or anally raped by an adult male. PSR ¶ 12.

During the chat – alarmingly – Defendant represented that he had access to a 13-year old family member, that she had "rubbed her pussy on my cock," and that he was often left alone with her. PSR ¶ 10. Given the concern that Defendant was sexually abusing a minor in his family, if not his household, law enforcement quickly sought and executed a search warrant at Defendant's Moses Lake residence. The subsequent search of Defendant's phone revealed additional evidence of his online child pornography activities, including a small collection of child pornography images and videos.

After being advised of his rights pursuant to *Miranda*, Defendant told investigators that he received the child pornography files he sent to the UC from another Kik user and that he had saved the files in his photos on his phone. He denied an inappropriate relationship with a minor and said he was just joking when he claimed otherwise to the UC.

**UNITED STATES' SENTENCING MEMORANDUM - 4**

Defendant later admitted to genital-to-genital and oral-to-genital contact with a minor, after being confronted with a journal entry in which a 13-year old girl described the commission of sex acts with Defendant. PSR ¶ 36-38. In the journal, the minor victim had transcribed a letter from Defendant to her. Defendant was shown copies of the transcribed letter and allowed to strike out content he denied writing. Defendant acknowledged and initialed the following portion of the letter[1] with no excisions:

> hey twerp
> i had a hard time
> controlling myself in oregon
> if it had gone on any longer
> i woluld have have held you
> down and slowly shoved it
> into to. I wish there was
> for you to send pictures.
> I wish i had seen you in
> oregon sitting on top of it
> Just the thought of feeling
> it skick inbetween your
> little lip's makes me want to
> cum. Just know I'm
> thinking of you riding me
> when i masterbate!

To his credit, Defendant has not since denied the sex acts or his admission to them.

Child pornography videos and images are crime scene photos. They are the documentation of the degradation, humiliation, and exploitation of little kids at the mercy of their abusers. Defendant's consumption and sharing of these videos and images warrants a meaningful prison sentence, even before one considers that Defendant engaged in hands-on sexual conduct with a 13-year-old girl.

2. <u>The history and characteristics of the defendant</u>

Defendant's history and characteristics further support a 120-month term of prison. Defendant is sexually attracted to prepubescent minors and has done more than

---

[1] Bates No. 00000012.08. The government notes that including this portion of the journal does not identify the minor victim.

**UNITED STATES' SENTENCING MEMORANDUM - 5**

obtain child pornography to satisfy his sexual interest. Indeed, he has done the worst thing he can do to satisfy his sexual interest, and that is to engage in sexual conduct with a minor.

It is true Defendant does not have a criminal history to speak of. However, in lacking criminal history, Defendant merely places himself in the "heartland of child pornography defendants." *See United States v. Turman*, No. CR 18-51-M-DLC, 2018 WL 4690803, at *3 (D. Mont. Sept. 28, 2018) ("A lack of criminal history does not distinguish Turman but merely places him in the 'heartland' of child pornography defendants.") (internal citation omitted).

Additionally, despite minimally onerous release conditions, Defendant appears to have committed a new crime while granted the privilege of release even after entering his guilty plea. The United States anticipates addressing this more fully once the relevant police report is obtained and shared with the defense and U.S. Probation.

     3. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.</u>

Crimes involving the sexual abuse of a minor child are among the most, if not *the* most, serious crimes that can be committed. The harm to child pornography victims as a result of their images being trafficked online is well-established and irrefutable. *See, e.g., United States v. Williams*, 553 U.S. 285, 307 (2008) ("Child pornography harms and debases the most defenseless of our citizens."); *United States v. Monzel*, 746 F.Supp.2d 76 (D.D.C. 2010) ("It is beyond dispute that child pornography victims suffer from trauma as a result of their sexual abuse, and that the knowledge that anonymous individuals continue to view and distribute images of their abuse exacerbates the victims' feelings of fear, anxiety, and powerlessness."); Report to the Congress: Federal Child Pornography Offenses, United States Sentencing Commission (December 2012), at vi (child pornography offenses "result in perpetual harm to victims and validate and

**UNITED STATES' SENTENCING MEMORANDUM - 6**

normalize the sexual exploitation of children"); Emily F. Rothman, Chapter 10: Child Sexual Abuse Imagery, Pornography and Public Health, Oxford University Press, August 2021 at 165. https://academic.oup.com/book/39816/chapter/339938530 ("Some argue that new damage is done to a child each time videos or images of their victimization or abuse are viewed because it causes fresh humiliation and pain to know people are deriving pleasure from their exploitation.") (citing Gewirtz-Meydan, Lahav, Walsh, and Finkelhor, 2019, "Psychopathology Among Adult Survivors of Child Pornography." *Child Abuse & Neglect* 98: 11).

Receiving and sharing photographs and videos of a child's sexual abuse furthers the demand for continued production of such material and are vile crimes on their own merit. A sentence of 120 months recognizes this, promotes respect for the law, and is just punishment.

### 4. <u>The need for the sentence imposed to afford adequate deterrence and to protect the public.</u>

Given Defendant's commission of both online child pornography crimes and hands-on sexual abuse of a minor child, the connection between the two types of crimes cannot be ignored, given the Court's duty under 18 U.S.C. § 3553(a)(2)(C) to impose a sentence that protects the public. A review of available studies with information on over 4,400 child pornography offenders found that 55% of the offenders admitted to engaging in direct sexual contact with a minor at some point.[2] Fifty-five percent. Only 13% of the offenders had an official criminal record for hands-on sexual crimes. *Id*. This suggests that roughly 40% of offenders who have been caught engaging in online child pornography crimes have also committed contact

---

[2] Seto, Hanson, and Babchishin (2010) "Contact Sexual Offending by Men with Online Sexual Offenses." *Sexual Abuse* 23, no. 1: 124– 145.

**UNITED STATES' SENTENCING MEMORANDUM - 7**

sexual crimes *unknown to the judicial system*. In other words, over half of the child pornography offenders that have come before the Court are likely to be contact sex offenders. However, the Court is only likely to be aware of the contact crimes in roughly 13% of the cases. Nevertheless, what the data demonstrates at its most basic level is that there is a documented and strong correlation between child pornography viewing and direct contact offenses. Defendant is among the 55% of offenders who have done both; he is the second such Defendant of which the undersigned AUSA is aware being sentenced by this Court in just the last four months. *See United States v. Robert Root*, 1:22-CR-2018-SAB, Judgment entered November 9, 2023 (imposing 96 months).

Additionally, child pornography offending is a valid diagnostic indicator of pedophilia.[3] And pedophilia is a strong predictor of sexual recidivism. *See State v. Eppinger*, 91 Ohio St.3d 158, 160-161 (2001) (recognizing the increased risk of recidivism for pedophiles, relying on studies that estimated the rate of recidivism as being as high as 52 percent for rapists and 72 percent for child molesters).[4]

---

[3] Seto, Cantor, and Blanchard (2006) "Child Pornography Offenses Are a Valid Diagnostic Indicator of Pedophilia." *Journal of Abnormal Psychology*, 2006, Vol. 115, No. 3, 610-615; *see also* Diagnostic and Statistical Manual of Mental Disorders, 5th Edition (2013) at 698 ("The extensive use of pornography depicting prepubescent children is a useful diagnostic indicator of pedophilic disorder. This is a specific instance of the general case that individuals are likely to choose the kind of pornography that corresponds to their sexual interests.").

[4] *See also* Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking, <u>Sex Offender Management Assessment and Planning Initiative</u> (hereinafter *SOMAP)*, U.S. Department of Justice, March 2017 at 63, 84 https://smart.ojp.gov/sites/g/files/xyckuh231/files/media/document/somapi_full_repor

**UNITED STATES' SENTENCING MEMORANDUM - 8**

According to the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, a diagnosis of pedophilic disorder requires an individual to (1) have "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children" over a period of at least six months; (2) to have acted on these urges or to be distressed by them; and (3) to be at least 16 years old and at least five years older than the child victim.

These factors provide a mechanism wholly independent of the parties' arguments to assess the severity of Defendant's conduct and sexually motivated character. The uncontested facts in this case establish that Defendant fulfills each of the three conditions required of a diagnosis of pedophilic disorder. Thus, Defendant's characteristics that are compatible with a pedophilia diagnosis are also suggestive of a high likelihood of sexual recidivism.

Regardless of whether Defendant is formally classified as a pedophile, his uncontested actions – uncontested crimes – demonstrate that he is a danger to society. His sexual interest in minors goes well beyond seeking out and viewing child pornography online; he has acted on this sexual interest.

A sentence of 120 months in this case is necessary to protect the public – particularly the most vulnerable among us. Such a sentence also serves to send a message of deterrence, both generally and individually.

---

t.pdf ("The most important distinction among child sexual abusers is whether they are pedophilic or nonpedophilic, because pedophilia has been shown to be a strong predictor of sexual recidivism.") (citing Hanson & Bussiere (1998) Predicting relapse: A meta-analysis of sexual offender recidivism studies. *Journal of Consulting and Clinical Psychology*, 63, 348–362).

**UNITED STATES' SENTENCING MEMORANDUM - 9**

### 5. The kinds of sentences available

The Court must sentence Defendant to a term of prison of no less than 60 months, followed by a term of supervised release of not less than five years. The maximum sentence that may be imposed is 20 years in prison and up to a life term of supervised release. Additional fines and special assessments apply. Probation is precluded by 18 U.S.C. § 3561(a)(1).

### 6. The established sentencing range

Based upon a total offense level of 34, a criminal history category of I, the advisory guideline imprisonment range is .151 to 188 months.

### 7. The need to avoid unwarranted sentence disparities

"The purpose of the sentencing guidelines is 'to eliminate disparities among sentences nationwide.'" *United States v. Franklin*, 785 F.3d 1365, 1371 (10th Cir. 2015) (quoting *United States v. Zapata*, 546 F.3d 1179, 1194 (10th Cir. 2008)). although the government's recommended sentence is below the advisory guideline range, it does not represent an unwarranted disparity.

The government's recommended variance is largely due to Defendant's individual characteristics, such as his "self-esteem issues" and "social difficulties connected to his limited cognitive abilities and underdeveloped socialization." PSR ¶ 64. These characteristics are double-edged, however. They do not make Defendant less of a risk of danger or recidivism; Defendant "relates better to children and young adolescents than age-appropriate peers" and there is no suggestion of that changing. *Id*. Indeed, Defendant's "cognitive deficits, feelings of inadequacy, underdeveloped social skills, and limited age-appropriate relationships," are among the "most concerning risk factors associated with Mr. Rice." PSR ¶ 65. At the same time, the noted issues do offer some mitigation, even while Defendant himself admitted that he knew he shouldn't have done what he did.

**UNITED STATES' SENTENCING MEMORANDUM - 10**

It is notable that the law provides a mandatory minimum prison sentence of 15 years for offenders like Defendant, who have committed child pornography trafficking offenses after committing child sexual abuse crimes. *See* 18 U.S.C. § 2252A(b). Again, the United States is recommending less. However, the 120-month sentence recommended does not cause an unwarranted sentencing disparity given the individualized facts and circumstances of this case.

        8.      <u>The need to provide restitution to any victims of the offense</u>

The law requires restitution be paid in an amount of not less than $3,000 per victim. As of the filing of this Memorandum, only one of Defendant's victims have submitted a request for restitution. PSR ¶ 15. The United States requests restitution in accordance with that request.

      B.  <u>Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)</u>

The Guidelines, formerly mandatory, now serve as one factor among several that courts must consider in determining an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). It remains, however, that "the Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id.* at 108-09 (internal quotation marks omitted). Thus, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

The Guidelines are the sole means available for assuring some measure of uniformity in sentencing, thereby fulfilling a key congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the 3553(a) factors, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments.

**UNITED STATES' SENTENCING MEMORANDUM - 11**

Therefore, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

## II.     $5,000 Special Assessment of the JVTA

Assessments paid under the JVTA are deposited into the Domestic Trafficking Victims Fund for grants to enhance programs that assist trafficking victims and provide services for victims of child pornography.

Under the JVTA, the Court "shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under ... (3) chapter 110 (relating to sexual exploitation and other abuse of children)." 18 U.S.C. § 3014(a)(3). In imposing a JVTA assessment, the non-indigency of a defendant is the governing deliberation and the statute does not require the court to consider the factors enumerated in 18 U.S.C. § 3572 with respect to the entry of a non-JVTA fine. *See generally* 18 U.S.C. § 3014 (no reference to or requirement upon the court to evaluate the 18 U.S.C. § 3572 factors when imposing a JVTA assessment).

Whether a defendant is non-indigent for the purposes of a JVTA assessment is determined not by a static snapshot of a defendant's financial condition at the time of sentencing, but instead should be based on considerations of a defendant's current and future financial condition.

> [A] district court must resolve two basic questions in assessing the defendant's indigency: (1) Is the defendant impoverished now; and (2) if so, does the defendant have the means to provide for himself so that he will not always be impoverished?
> …
> Because the defendant's obligation to pay persists for at least twenty years after his sentencing, it would make little sense for the district court to consider only the defendant's financial condition at the time of sentencing. That snapshot in time may not accurately represent the defendant's condition five, ten, or twenty years after sentencing. Rather, the defendant's employment prospects and earnings potential

UNITED STATES' SENTENCING MEMORANDUM - 12

> are probative of his ability to pay the assessment—and are fair game for the court to consider at sentencing.

*United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019).

Although not singularly dispositive, the government notes that Defendant's counsel is appointed. *See Shepherd*, 922 F.3d at 759 (fact that defendant is represented by appointed counsel is "probative but not dispositive" of indigence under § 3014, because indigence is not the standard for appointment of counsel).

Second, Defendant may be required to participate in the Bureau of Prison's Inmate Financial Responsibility Program and pay quarterly towards any outstanding monetary penalty. If ordered to pay $25 per quarter, Defendant could pay $1000 through the IFRP by the time he is released to supervised release after a 10-year prison term.

Additionally, Defendant has been steadily employed since 2014 and will likely continue to be employable in similar positions upon his release from prison. He does not have any dependents for whom he is financially responsible, and it is possible he could return to living with his parents upon release, given their on-going support and the possibility that any current minor residents will have turned 18 by that time.

Rather than request a fine, the government respectfully requests the Court consider imposing the JVTA special assessment.

### III. $35,000 Special Assessment of the AVAA

The Court may consider imposition of an assessment pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA). Assessments paid under the AVAA are deposited into the Child Pornography Victims Reserve, which funds are available to victims in partial or full satisfaction of their restitution claims. 18 U.S.C. §§ 2259B(b), 2259(d). "It is the intent of Congress that victims of child pornography be compensated for the harms resulting from every perpetrator who contributes to their anguish. Such an aggregate causation standard

**UNITED STATES' SENTENCING MEMORANDUM - 13**

reflects the nature of child pornography and the unique ways that it actually harms victims." AVAA, PL 115-299, December 7, 2018, 132 Stat 4383.

Under the AVAA, the Court shall assess not more than $35,000 on any person convicted of production of child pornography. 18 U.S.C. § 2259A(a)(1). This assessment is "in addition to any other criminal penalty, restitution, or special assessment authorized by law." § 2259A(a). Imposition of an AVAA assessment "does not relieve a defendant of, or entitle a defendant to reduce the amount of, any other penalty by the amount of the assessment." 18 U.S.C. § 2259A(2).

In determining the amount of AVAA assessment to impose, the Court shall "consider the factors set forth in sections 3553(a) and 3572." 18 U.S.C. § 2259A(c). These factors include, in addition to the 3553(a) factors discussed above:

> (1) The defendant's income, earning capacity, and financial resources;
> (2) The burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially depending on the defendant, relative to the burden that alternative punishments would impose;
> (3) Any pecuniary loss inflicted upon others as a result of the offense;
> (4) Whether restitution is ordered or made and the amount of such restitution;
> (5) The need to deprive the defendant of illegally obtained gains from the offense;
> (6) The expected costs to the government of any imprisonment, supervised, release, or probation component of the sentence; [and]
> (7) Whether the defendant can pass on to consumers or other persons the expense of the fine.

18 U.S.C. § 3572(a).

**UNITED STATES' SENTENCING MEMORANDUM - 14**

Here, as discussed above, Defendant has the capacity for future earnings through participation in the Bureau of Prison's Inmate Financial Responsibility Program and post-incarceration employment. Defendant is currently 26 years old and has no dependents for whom he is financially providing.

While Defendant could be facing restitution requests from several more of the victims depicted in his recovered child pornography collection, all of whom would be entitled to a mandatory restitution award of at least $3,000, only one victim is requesting restitution. If the 12 Series victims recognized by the NCMEC requested restitution, the minimum total to be awarded would be $36,000. Presently, the total requested on behalf of one victim is no less than $3,000. PSR ¶ 15. As a result, the restitution award ordered by the Court will have a minimal effect on Defendant's ability to contribute financially to victims for his share of aggregate harm through the AVAA assessment. AVAA, PL 115-299, December 7, 2018, 132 Stat 4383. If Defendant was subject to a greater restitution order, that would be a § 3572 factor weighing against imposition of an AVAA assessment. 18 U.S.C. § 3572(a)(4).

The United States recommends imposition of an AVAA assessment in the amount of $6,000, the equivalent to the mandatory restitution payable to just two victims. If the Court imposes both an AVAA assessment and a JVTA assessment, Defendant's payments would go first to the AVAA assessment. 18 U.S.C. § 2259A(d)(2).

## CONCLUSION

Application of 18 U.S.C. § 3553 supports a sentence of 120 months in prison, for Defendant's commission of the crime of receipt of child pornography. The government submits that such a sentence is sufficient, but not greater than necessary,

**UNITED STATES' SENTENCING MEMORANDUM - 15**

to accomplish the goals of sentencing, and that a lesser sentence is not supported by application of the 18 U.S.C. § 3553(a) factors.

Dated: February 28, 2024.

                Vanessa R. Waldref
                United States Attorney

                *s/ Ann T. Wick*
                Ann T. Wick
                Assistant United States Attorney

**UNITED STATES' SENTENCING MEMORANDUM - 16**

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*s/ Ann T. Wick*
Ann T. Wick
Assistant United States Attorney

**UNITED STATES' SENTENCING MEMORANDUM - 17**